## SEIBERT v. WARE.

(Supreme Court, Special Term, Nassau County. February, 1916.)

1. COVENANTS ⊚⇒51(2)—BUILDING RESTRICTIONS—CONSTRUCTION.
   Where the owner of a tract platted and improved it for a high-class residence district, and included in all deeds restrictions as to the kind and position of buildings which might be erected on the lots, the restrictions were for the mutual benefit of the purchasers of the lots, and should not be frustrated by the court by a strained construction of the language.
   [Ed. Note.—For other cases, see Covenants, Cent. Dig. § 50; Dec. Dig. ⊚⇒51(2).]

2. COVENANTS ⊚⇒103(2)—BUILDING RESTRICTIONS—GARAGE.
   A portable metal garage, situated a few feet back of the house and connected with it only by strips of wood, violates a clause in a deed providing that no stable or garage should be built on a lot of that size.
   [Ed. Note.—For other cases, see Covenants, Cent. Dig. § 169; Dec. Dig. ⊚⇒103(2).]

3. INJUNCTION ⊚⇒62(3)—SUBJECT OF RELIEF—BUILDING RESTRICTIONS—TEMPORARY VIOLATION.
   The fact that a garage, placed on a lot in violation of a building restriction, was portable, so that the violation might be only temporary, does not prevent an injunction to restrain the violation.
   [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 127; Dec. Dig. ⊚⇒62(3).]

4. INJUNCTION ⊚⇒21—SUBJECTS OF RELIEF—BUILDING RESTRICTIONS—RIGHT TO SUE.
   Where both plaintiff and defendant owned under deeds providing that no garage should be built unless appurtenant to a house on a plot not less than 100 feet in width by 150 feet in depth, the fact that plaintiff had a garage appurtenant to his house on a corner tract, consisting of nine lots, each 20 feet wide by 100 feet deep, does not show a violation by him of the restriction which prevents him from suing to restrain a violation by defendant, since the measuring of the width and depth of a corner is not necessarily the same as on an inner tract, and, taken together, plaintiff's lots were greater than the required area.
   [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 19; Dec. Dig. ⊚⇒21.]

Suit for injunction by William H. Seibert against Emily Ware. On final hearing. Judgment directed for plaintiff.

Boyce Smith, Jr., for plaintiff.

Lyman A. Spalding, of New York City (Edward J. Byrne, of Brooklyn, of counsel), for defendant.

BENEDICT, J. The plaintiff and the defendant are the respective owners of two parcels of ground shown upon the maps of "Garden City Estates." Each derived title from the corporation of that name; which had in the years 1906, 1907, and 1908 purchased 700 acres of land, or thereabouts, at Garden City, Long Island, and had subdivided the tract into blocks and lots, and improved and developed the property for residential purposes. The improvements consisted in laying out, making, and macadamizing streets and roads, building walks and curbs, setting out trees and shrubs, putting in sewers, and introducing water, gas, and electrical service. The property was then

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

placed on the market for sale according to the maps of the property which were filed, and lots were sold to purchasers subject to certain restrictive covenants or negative easements of substantial similarity concerning the character, cost, and position of the improvements permitted to be placed on the property by purchasers thereof.

[1] It is evident, from the nature of the restrictions imposed, that it was the intention of the developers to create a residential section of a high grade, and to prohibit, so long as the covenants should remain operative, any buildings not coming within the terms of the restrictions. This purpose, being for the mutual benefit of all who should purchase property in the section, was both reasonable and lawful, and this court should not, by any strained construction or overnice refinement of language, frustrate the plain intent of the parties as expressed in the contracts or deeds under which title was conveyed by the vendors. It appeared in evidence that about 2,000 lots had been sold by Garden City Estates, all of them subject to restrictions which were similar in their nature, as applied to lots of similar size and situation in different sections of the tract.

[2] The defendant did not acquire the property which she owns by direct purchase from Garden City Estates. It came to her by a deed from Harriet Ware, her daughter, who in turn had purchased it from William C. Ansell and George P. Bowdren, who in turn had purchased it from Garden City Estates. In each of these deeds the property is described by courses and distances, as well as by the lot numbers, 4, 5, and 6, in block 40, upon the map of Garden City Estates. The three lots, taken together, were 60 feet in front and rear by 100 feet in depth on each side. Each of the deeds contained restrictive covenants, running with the land until 1930, which the grantees severally agreed to observe and respect. Among them was a covenant that only one dwelling, of the character specified in the deed, should be built upon each parcel of land 60 feet in width by 100 feet in depth; and each deed also contained a covenant in the following words:

"No stable or garage shall be built unless appurtenant to a house on a plot not less than 100 feet in width by 150 feet in depth."

The defendant acquired her title by deed recorded in December, 1913. She or her grantors built a dwelling house upon the plot, and she resides there with her married daughter, who was, before her marriage, Harriet Ware. In May, 1915, the defendant built a garage upon her property. This garage was constructed of sheet metal, like galvanized iron, and painted, although the paint did not match in shade the color of the house. The garage was placed back of the house, with its sides parallel with the rear of the house, and the nearer side 2 or 3 feet distant therefrom. The garage has a ridged or peaked roof and four walls, and its door opens from the front, which is on a line with the right-hand, or southerly, side of the dwelling. The garage has no means of access or communication with the dwelling. After the garage had been built a few days, it was attached to the house by boards nailed from each end of its nearer side to the

dwelling, but still leaving an uncovered space between it and the dwelling.

I think this was a violation of the restrictive covenant above recited, within the principles of law which are applicable to such a case. These principles have been stated at length quite recently by Mr. Justice Putnam in Thompson v. Diller, 161 App. Div. 98, 146 N. Y. Supp. 438, and the subsequent opinion which he wrote in Sullivan v. Sprung, 170 App. Div. 237, 156 N. Y. Supp. 332, is not, as I read it, an authority in favor of the defendant here. In the latter case the garage was a lean-to, two sides of which were part of the house itself. It was merely an addition to or extension of the dwelling.

[3] Here the garage was a separate, complete, and entire building, with its own walls and roof, and built so as not to be incorporated in the dwelling. It was a portable building, placed on the defendant's lot and intended for use as a garage, and for no other purpose. This is made very clear by the statements of the defendant herself, contained in her letter to the plaintiff (Plaintiffs' Exhibit 12). She says:

"When the deed was signed we gave little or no heed to the restrictions and did not know what they were. However, if we had read them, I presume we would have signed the contract just the same, as we never expected to own a car. When my daughter and Mr. Krumbhaar were married, the car was among the presents, but not received until last September, and soon afterward went into storage for the winter. The benefit to my daughter, who sits so many hours a day at the piano, was so great that we decided that we must make a place to house the car. I therefore engaged a carpenter to put up a small building, but before the work was begun I was told that the restrictions on the property here would debar the building of such a garage. We then cast about in our minds as to what we could do. We could not afford the public garage, and so we finally decided to get a portable garage and attach it to the house if we found it necessary, although we thought, it being portable instead of stationary, it would not come under the head of buildings described in the restrictions."

The purpose thus frankly declared was persisted in, even when the defendant was informed that her violation of the covenant of her deed would result in an action for an injunction (see Exhibit A of complaint).

The defendant's breach of the covenant seems to have been deliberate. She evidently thought or was advised that by adopting the plan of using a portable building, instead of one permanently affixed to the freehold, she could disregard an agreement which had become irksome. It is none the less an unlawful act, in that she has put in place on the property a so-called *portable* building, constructed elsewhere, instead of causing a building to be erected thereon in accordance with her first design. Portability does not necessarily imply transciency, and a violation does not need to be permanent before equity can intervene.

The end sought to be accomplished by the restriction was to prevent the building of any garage upon plots of less than a certain size. The motive may have been to avoid fire hazard or noise from the operation of cars in close proximity to houses on adjoining lots. Whatever the motive, the covenant is plain, and a temporary violation, while it lasts, is within its purview just as much as a more permanent one.

[4] The defendant's contention that the plaintiff does not come into equity with clean hands does not commend itself to me. The plaintiff has, it is true, built a garage upon his own property; but he has not himself violated the restriction. He did not build it until he had become the owner of nine lots, forming together a plot of ground 100 feet by 180 feet in area, on the corner of Stratford avenue and Wellington Road. The objection to the building of a garage upon a plot of relatively smaller size does not apply when the plot increases to the size prescribed as permitting a garage, viz. 100 feet in width by 150 feet in depth. The method of measuring "width" and "depth" in the case of a corner plot is not necessarily the same as it would be in the case of its component and contiguous parts, considered as single lots. There is nothing in the plaintiff's deeds which compels him to build his dwelling house so that it shall face on one of the two streets named rather than upon the other. So long as he was the owner of the smaller plot, he, too, was subject to the defendant's negative easement prohibiting a garage. If, in the future, he should erect another dwelling upon the plot, he would thereby lose the right to maintain a garage upon any part of his present holdings; nor can he now have more than one garage thereon, even though he has the right to build three dwellings.

The plaintiff is entitled to judgment for the relief asked for; but, under the circumstances, I think no costs should be allowed.

Plaintiff's and defendant's proposed findings have been passed upon. Let the plaintiff present for signature a fair copy, which shall contain all the findings which have been made for either party.